**FILED**

CH

FEB 2 0 2008  NF

Feb 20 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

YAODI HU

        Plaintiffs

vs

Pearl River Piano USA,
Al Rich and Bob Saari,

        Defendants

08CV1032
JUDGE HOLDERMAN
MAGISTRATE JUDGE COX

Jury demand

damage claim: $500,000

# Complaint

1. Now comes Yaodi Hu doing business as Illiana Piano, pro se filing his Sherman Complaint and other supplemental claim.

## Parties:

2. Yaodi Hu is a natural person residing at City of Chicago Illinois doing business as Illiana Piano.

3. Pearl River Piano is the largest piano factory in the world located in Canton Province of People's Republic of China.  Upon information and belief, it is a government owned entity.  Pearl River USA is a direct subsidiary of Pearl River Piano.  Pearl River USA is also the exclusive entity distributing all Pearl River pianos in U.S.  Pearl River USA is based in California.

4. Al Rich was the sales manager when Illiana Piano was granted dealership contract with Pearl River USA around 2000.   Al Rich became CEO of Pearl River USA later on.

5. Bob Saari is the sale manager and the direct contact person when Illiana Piano was granted dealership contract.

1

# Jurisdiction

6. Sherman Act 15 U.S.C. § 4.

7. Equal Rights under the Law 42 U.S.C. § 1981

8. Supplemental Jurisdiction 28 U.S.C. § 1367

9. Diversity of Citizenship  28 U.S.C. § 1332

10. 28 U.S.C. § 2201

11. 28 U.S.C. § 2202

# Venue

12. Venue is proper in this District pursuant to 28 U.S.C. §  1391 (a)(2) "a substantial part of the events or omissions giving rise to the claim occurred" in this District.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2) "a substantial part of the events or omissions giving rise to the claim occurred" in this District.

# Statement of the Facts

14. Around year 2000, Yaodi Hu doing business as Illliana Piano contacted Pearl River Headquarter in China expressed his desire of selling Pearl River Piano.

15. Hu was referred to Pearl River USA.  Bob Saari as sales person visited Hu's place in Danville Illinois.  Hu bought several pianos as his first order.

16. During the initial negotiation of the contract with Pearl River Piano, Al Rich as sales manager was intimately involved.

17. At the very initial stage of negotiating a dealership contract, Hu had the uphill battle.  Hu did not fit into a typical piano dealer prototype:  a white male. Throughout the U.S. typical successful piano dealers were white male and that has not changed.  Upon information and belief, most piano dealers in Chicago land area are white male.

18. Hu was given discriminatory terms in his contract terms, Hu had to pre-pay all his orders of piano.  Hu also was not given the discounts otherwise would have been given to other dealers.

19. Hu managed to stay in business for the next several years.

20. Relying upon the verbal and written promise that Hu is the sole dealer for the Chinese in the Chicago land area, Hu advertised in several Chinese newspapers for several years. Hu's sales volume was quite good as a starter in piano business for first several years.

21. Bob Saari and Al Rich both promised to Hu directly verbally that Hu will be the only dealer for the Chinese community in Chicago land area.

22. In and around year 2004, Hu's dealership relationship was terminated. Pearl River USA awarded exclusive dealership to an individual Angelo for the entire area of Northern Illinois. Angelo was financed by Pearl River with free credit.

23. Hu had several conversations with Angelo and visited his store. The purpose of awarding exclusive dealership to Angelo is to eliminate competition and manipulate price by Pear River USA.

## Count I   Claim under 42 U.S.C. § 1981

24. Hu is ethnic Chinese and does not fit into a typical successful piano dealer prototype: while male.

25. Hu contacted Pearl River in China and other Chinese employee in Pearl River USA, the answer was that Al Rich and Bob Saari were Americans hired to take care of American market and Hu's grievances were unaddressed after Hu brought them up repeatedly including the recent NAMM show in Anaheim California.

26. Hu was not offered additional discount which he would otherwise been offered had he been a white male. Hu was not offered any credit and Hu had to pay through wiring of fund in advance most of the times.

27. Race is a motivating factor in terminating dealership relationship with Hu because Hu did not fit a typical successful piano deal prototype: a while male.

## Count II.  Claim under Sherman Act 15 U.S.C.§ 1

28. 15 U.S.C. § 1 states the following: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is

declared to be illegal."

29. "The Supreme Court has held that the limitations period does not begin to run until the damages are inflicted and ascertainable." ***Harold Friedman Inc. v. Thorofare markets Inc.***, 587 F.2d 127, 137 (C.A.3 (Pa), 1978), ***Zenith radio Corp. v. Hazeltine research, Inc.***, 401 U.S. 321, 338-339, 91 S. Ct. 795, 28 L.E.2d 77 (1971)

30. While vertical price arrangement is no longer per se violative of Sherman Act, see ***Leegin Creative Leathr Products, Inc. v. PSKS, Inc***. 551 U.S. ___ (2007), Pearl River's arrangement of exclusive dealership with Angelo was aimed at manipulating the price and violative of Sherman Act.

31. When exclusive dealership were awarded to Angelo, Hu was not informed.   Even if Pearl River USA had legitimate reason awarding exclusive dealership to Angelo, it nonetheless was unreasonable under the Rule of Reason, eliminating Hu as a local piano competitor.   Hu at the time carried only Pearl River brand.   "On the other hand, the granting of a right of exclusivity seems less tenable under the antitrust laws when one of its purposes and obvious effects is to eliminate a present competitor than when it merely precludes potential future entry into the market." ***Harold Friedman Inc. v. Thorofare markets Inc.***, 587 F.2d 127, 143 (C.A.3 (Pa), 1978).   See also ***Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.***, 550 F.2d 189 (C.A. 4 (N.C.), 1977) (authorized dealer being terminated and the Fourth Circuit held that preliminary injunctive relief should have been granted to the dealer)

32. Through conversation with Angelo, Hu learned that the purpose of awarding exclusive dealership to him was to eliminate price competition among the dealers. That was a per se violative of Sherman Act.

33. "A violation may still be found in such circumstances because in a civil action under the Sherman Act, liability may be established by proof of either an unlawful purpose or an anticompetitive effect." ***Lain v. Real Estate Board of New Orleans, Inc.***, 444 U.S. 232, 243 (1980).

## Count III.  Breach of Oral Contract

34. Over the years, both Bob Saari and Al Rich assured Hu directly and indirectly that Hu was going to be their dealer exclusively in the Chinese community.

35. On the contrary, Bob Saari took advantage of their position as vendor, misappropriated Hu's trade secrete and pass it on to his competitor.

36. Bob had first terminated Hu's dealership, then advice his competitor, the purported exclusive dealer Angelo in the Chicago land area to advertise in Chinese new paper where Hu advertised. Trying to reap the benefit from Hu's multi-year effort of advertising in Chinese community. Bob's effort was trying to direct all Hu's customers to his competitor Angelo

37. Pearl River USA, Bob Saari acted in bad faith and breached the covenant of fair dealing in our contractual relationship.

38. By terminating the dealership relationship with Hu, Pearl River USA breached its promise to Hu over the years.

39. When Hu started out his dealership, Pearl River was still not an established brand and not many dealers were willing to sell that brand. Pearl River USA took advantage Hu's willingness to advertise consistently in Chinese newspaper for several years building up its brand recognition in Chinese community. When Pearl River become a name brand in U.S.A. in and around 2004, Pearl River decided to reap all the benefit to itself by terminating dealership with Hu and award exclusive dealership to Angelo.

40. Not too long before that termination, Bob Saari was encouraging Hu to purchase another retail location for his piano business and Hu purchased 3352 W. 147th Midlothian IL 60445.

41. After the termination, plaintiff had to buy other brand of piano to fill his inventory. Hu purchased two containers of piano from other Chinese manufacturers.

42. Hu's multi-year effort of promoting Pearl River brand was too successful to turn to another brand as substitute and Hu suffered loss of profit for several years. Hu was not successful in selling other brand of pianos. Hu's suffering of damages from Pearl Rivers USA's termination of dealership agreement were not clear until his effort of selling other brands of piano failed.

# Relief Sought by Plaintiff

43. Plaintiff Hu is seeking treble compensatory damages totaling $500,000. Hu is also seeking punitive damages in the amount of $5,000,000.

44. Hu is seeking declaratory and injunctive relieves.

Yaodi Hu  219 W. Cermak Chicago IL 60616    (773) 216 3173

Pearl River Piano

2260 S. Haven Ave

Suite F  Ontario, CA

91761